I'll just wait for the courtroom to clear, Mr. Darst. Okay. Come on up, Mr. Darst. Good morning. Thank you, Your Honor. You may please the court. This is a classic case of race discrimination. The African American plaintiff, Timothy Upchurch, has impressive qualifications as a lieutenant at the Correctional Industrial Facility, the CIF, at Pendleton, Indiana. He was the 2016 CIF Supervisor of the Year. He performed the captain's duties when the captain was absent and for about two months after the captain left. The captain recommended Upchurch for the captain position in 2018. Mr. Upchurch was rated as exceeds expectations for the year 2018 when he was doing the captain's job. The CIF had not promoted any African American above lieutenant for years since 2012. CIF deviated from its policy of promoting from within, which the warden stated in an email later, and promoted a white lieutenant from outside CIF to the CIF captain's position. The CIF then instructed Timothy Upchurch to train the white new captain, the lieutenant from outside the CIF, how to do the CIF captain's job. Timothy Upchurch complained about the race discrimination and about not promoting any African Americans above lieutenant. When he was told that he was not promoted, he was told this in April of 2018, CIF did not investigate his complaints. After he was told to train the white new captain how to be the CIF captain, he complained again. He complained that he was told that he would not have to train the new captain, and then they told him to train the new captain. Mr. Darst, it doesn't look like you took any depositions in this case. Correct. Including of the decision makers. Correct. Which I found surprising given that you have the burden of proof. Can you shed any light on that? Was there any particular reason? Your Honor, the testimony was through affidavits, and if I may speak to that burden of proof, that is often stated, and that is true for the case. But on a motion for summary judgment, the burden is on the moving party to prove that there is no genuine issue of material fact. But you have to put forth evidence that would refute that, and you ultimately want to go to trial and win or settle it. It just seems surprising that you didn't take any depositions, especially of the decision makers. The decision makers had an opportunity to tell their side of the story through their affidavits, and they, in fact, lied about the date of his complaint to Deputy Warden Cole and Major Fox, and tried to say that his complaint was after his demotion, when he was complaining about his demotion, and saying that he complained about the lack of promotions of African Americans. So they lied in their affidavit. I don't have confidence or didn't have confidence with these facts that the decision makers would tell the truth in a deposition. Wouldn't that be good for you, that you could impeach them? Well, it's difficult to show when someone is lying, as you know. And it's difficult from these affidavits to show that they're lying. But you have to look at them when they're saying, well, the warden said, I knew about his complaint to Deputy Warden Cole and Major Fox that there were no African Americans promoted above lieutenant. And then the deputy warden changed that and said, well, that meeting occurred on February 20th, the following year, 2019, which is false. That meeting occurred when they told Mr. Upchurch that he was not promoted. He wouldn't complain about promotions when he was demoted. He was complaining about the lack of promotions when he was told that he was not promoted. And that was the testimony. As a matter of fact, the entry of the court recognized that he made that complaint in April of 2018, not 2019. So when you're faced with years of discrimination, you're faced with, as a matter of fact, here's another fact, if I may point out to you. I was asking Tim Upchurch the same question. Why did they give, what reason did they give for demoting you? And he said they didn't. And I asked the deputy warden why. And he said, ask the warden. I asked the warden why. And she said, well, you've been a hindrance to me since I got here. Now, they didn't give him any reason for demotion. They didn't give him. So for me to depose, what would a deposition do? I don't know. So, as a matter of fact, there's another reason. It's because of the lack of funds and the cost of depositions. There are so many facts in this case that we had to track down every excuse that the employer was given before the employer had to give it. It would be terribly expensive. We would never be able to afford that. As a matter of fact, the court said, well, we don't have the employer's records here. We don't have the employer's records there. And implied that the employee had the burden to produce them. The employee didn't have the records. The employee asked for numerous employee employment records, employment files. We received them. We put them in the record. We summarized them for the court. And yet the court said, well, there's this possibility over here or there's this possibility over there. And implied that it was our burden to seek out things that were tangential and were not of any substance at the heart of it. So, I would hate to have a rule saying that for a motion for summary judgment, even before the motion is filed, you have to take depositions, and especially in a case here where there are years of discrimination, there are years of facts, we would be chasing ourselves. Maybe that gives you some of the feelings that I have as to why I wouldn't take a deposition in this kind of case. Does that help? Okay. The defendants did not do any investigation of the complaints of discrimination of Mr. Uchurch. As a matter of fact, the state said, the state abandoned its duty and said, we're not the employer of this state employee. The Department of Correction is the employer. Now, that is a new claim that has not been raised in other cases. As a matter of fact, cases that we have handled before, Knox v. State of Indiana, which involved the Penalty Complex, another building there, and Ortonville v. State of Indiana, which is the Penalty Complex, the state admitted that the Department of Correction's employees were state employees. As a matter of fact, last year, in the case of Galvan v. State of Indiana, the state admitted that Galvan was an employee of the state when he was working in DCS, Department of Child Services. In this case, the state changed and said, DCS and the departments, the DOC, Department of Correction, are the employers and not the state. That would be a terrible situation if every department was treated as an employer. The departments are not legal entities, as shown by Burris v. State, and which was also affirmed by this court appeal, finding that the lottery commission had income, it had assets, it had authority to sue, it had all of those things. So they were a suable entity and an employer. In this case, the Department of Correction has no income, no assets, no anti-discrimination policy. It would be terrible for them, in any case, because they have no policy against discrimination. They rely on the state policy. Neither the state nor the DOC enforce the policy against discrimination. So with no income, no assets for the Department of Correction, if we got a judgment against the Department of Correction, it would be a worthless judgment. They're judgment-proof, they don't have any assets. If the state pays it, then that shows that the state is the employer, is more evidence that the state is the employer. So the state, the employer will say, as a matter of fact, if the department was an employer, and every department within the executive branch was an employer, we would have to sue the Department of Correction and the state personnel department and perhaps the state itself as separate entities who were cooperating together in a conspiracy to allow race discrimination. That would be a terrible situation for anyone. It would be terrible for the departments, it would be terrible for the state. So this new effort to eschew or to abandon the employer's duties by the state is a situation that none of us would want. Thank you. We're going to reserve my time if I may. Thank you. Mr. Rector. Thank you. May it please the Court. I just want to start by addressing something that Mr. Darst said. There's no evidence that the defendants lied in their affidavits, and we argued, I believe, from the beginning that Mr. Upchurch had reported to Deputy Warden Cole in April and May of 2018 that he believed that the department should be hiring more African Americans or promoting more African Americans into the captain's position. I believe what he's talking about is that there was another meeting with the deputy warden in June of 2021, I believe, where he had again made the same comment. Also, in Warden Knight's affidavit, she says that she wasn't aware of the complaints of discrimination until after the demotion. What steps did the IDOC take to investigate Mr. Upchurch's complaints of discrimination? He had some formal ones, the step ones, three-step ones, separate and apart from what he characterizes as more informal conversations. Do we have anything in the record supporting the idea that the IDOC looked into these complaints? The only thing in the record is that the complaints were denied. If you're talking about the civil service complaints he made after the demotion, that the complaints were denied. That's what ultimately led to him filing the complaint with the Civil Rights Commission. I'm not sure there's anything in the record as to the steps that were taken to address those complaints, but Upchurch doesn't argue in his summary judgment briefing or in his briefs before this court that the department failed to take steps when he made the complaints in the civil service. He absolutely does argue that IDOC didn't do anything in response to his complaints about discriminatory promotions or failure to promote African-American employees at the prison. That he does say. Yes, he does say that. The complaints that he made to the deputy warden, he said that the department wasn't promoting African-Americans into the captain position, but I think the complaint he really makes in his brief, if I'm remembering correctly, maybe in his reply, is that the department hadn't investigated the complaints of harassment regarding Lieutenant Ridgway. I don't know that he makes a big deal about the department not investigating the complaints when he said that they weren't promoting African-Americans. And those complaints regarding Ridgway weren't related to his race. They were more related to Ridgway. It's in the gray brief, and then Mr. Darst just repeated it today. So you can move on. I'll start with the discrimination complaint. The department presented legitimate reasons for the demotion and for declining to promote Upchurch thereafter. The department demoted Upchurch because he failed to intervene or report peer-to-peer harassment between two officers that he was supervising. The HR had investigated the complaints that were made and determined that it was Upchurch that knew of the harassment and didn't intervene. Upchurch points to Officer Palmer and Captain Pero as comparators, saying that they were treated better in regards to his demotion because they weren't disciplined. But there are material differences, so they aren't comparators. For starters, Palmer was a correctional officer. He wasn't a supervisor of Officers White or Myers at the time, so he had different duties and responsibilities. And in regards to Captain Pero, he was a supervisor. He was the captain over Upchurch. But there is no evidence from the investigation that Pero was aware of the harassment or that he heard the comments that Officer White had made. So he failed to point to any similarly situated employees who were treated better or any evidence to show pretext in regards to the demotion. And that's not the occasion where Myers says Pero was in there and heard the thing repeated about White. Yes, that is the incident, but I don't believe that in the investigatory report it says that Pero heard anything. He's not mentioned as being in the shift office at the time. The investigatory report didn't address Myers saying Pero was there and heard it, you're saying? The investigatory report under Myers' statement doesn't mention anything about Pero being in the shift office at the time. Upchurch testified during his deposition that Pero was in the office. But you have to look at what the employer knew at the time and not necessarily whether the employer's decision was correct but whether they honestly believed. And based on their investigation, they believe that Upchurch was the one who failed to report the harassment or intervene and that Pero didn't know about the harassment. Moving on to the failure to promote or transfer Upchurch, the facility has a practice that if an employee is formally disciplined within 12 months, they can't be promoted within the facility. And so there were six positions that Upchurch applied for at Correctional Industrial Facility, in which he wasn't eligible. There were two positions that he applied for that he was eligible, but the department presented evidence that the two people that Warden Knight selected for those positions, she believed, were better for the job. Specifically, Brandon Ritchie was hired for the lieutenant position. He had been a sergeant at a different facility, and she thought he was desirable because he had experience with at-risk offenders, and the facility's population of at-risk offenders was increasing. And then Gilly was hired for the captain position, and he had previously been a captain at the Correctional Industrial Facility prior to transferring to another facility to gain additional experience. And so she hired him because of his work history, and she thought he could hit the ground running when he returned to the facility. So there's no evidence that the department's reasoning for hiring Ritchie or Gilly was pretextual. And then in regards to the other positions that Upchurch applied for at the other facilities, there's no evidence that Warden Knight had any influence on those decisions whatsoever, nor is there evidence that she influenced DCS's decision to not hire Upchurch as well. And then as to his retaliation claim, the department also presented evidence that had legitimate reasons for the demotion and for not promoting or transferring Upchurch. In regards to the demotion, as I mentioned earlier, there's no evidence that Warden Knight knew of the complaints of discrimination prior to the demotion, so there can't be a causal connection if she wasn't aware of those complaints. And then in regards to the failure to promote, Deputy Warden Cole had legitimate reasons for discourting Upchurch, which led to him being ineligible for promotion for six of the positions at Correctional Industrial Facility. The first, he failed to work overtime in January of 2019 and was disciplined. In March of 2019, he took unauthorized leave. July of 2020, he also took unauthorized leave. And then in February of 2021, he brought tobacco into the facility. And again, there's no evidence that Deputy Warden's reasonings were pretextual to support that it was based on his complaints of discrimination. The tobacco incident seems a little funny. Not ha-ha funny, but Upchurch is saying he asked to review the video. He was denied. He asked to have a witness, someone review the video with him. He was denied. He asked them to produce the video. He has a series of irregularities that he wants us to look at with regard to this, which was his ultimate sanction. You know, it's toward the end of the case and the facts in the case. And then he does say he had this major gillers or major gilly look at the video with him who agreed. It doesn't show him dropping some tobacco. So I'd like you to address that, you know, this tobacco situation. And of course, he says in his affidavit, I don't even use tobacco. But this results in a 10-day suspension. So I want you to address some of Upchurch's arguments about why this tobacco incident is suspect. Well, again, you have to look at what the employer honestly believed. And you can't consider, I guess, whether they're mistaken. Most of Upchurch's arguments go to that the deputy warden was mistaken in his belief. But the deputy warden reviewed the video. And he believed that the video showed tobacco dropping from Upchurch's pocket, I think, when he was walking through into the facility. And there's no evidence that that isn't true. And I believe that Upchurch actually did review the video. And so even if the deputy warden was mistaken, that doesn't show that he didn't honestly believe that it was Upchurch that brought the tobacco into the facility. And I also want to add that the video was provided to Upchurch during discovery. He could have produced the video as evidence to show that the deputy warden was lying, was not being truthful. That's not in the record before us. So I think that most of Upchurch's arguments are that he didn't actually do it, that he didn't actually bring the tobacco in. But again, like I said, you have to look at whether the deputy warden's belief was honest. And here there's no evidence pointing that it wasn't. The timing of the February 20th reprimand is concerning. Because it was one day after he complained, after Mr. Upchurch complained about discrimination to Deputy Warden Cole. And the next day he reprimanded him, which is very close. I know timing alone often isn't enough. We've said in some circumstances it can be. That was one day later. How do you respond to that? There's evidence in the record that the deputy warden was already planning to discipline Upchurch prior to Upchurch coming to speak with him. There's evidence that Ridgway had provided reports that Upchurch hadn't, I believe that was the unauthorized leave. He failed to work overtime in January on two different occasions. So we know that when Upchurch complained about the discrimination, that Deputy Warden Cole was already planning to discipline him. There are lots of cases that say that timing alone isn't enough. I know the Watermill case that Upchurch cited, I believe that was almost instantaneous. This was one day, though. Well, not instantaneous. It's not that far off. Right. I agree that it was close in time. But there's also, like I said, evidence that he was already planning to discipline and that Upchurch doesn't deny that he had refused the overtime. So the timing alone shouldn't be enough where there's no other evidence indicating that the deputy warden's decision was pretextual. And then I just want to briefly mention the employer issue, who the correct employer is. This court in De Silva held that it's the agency that is the employer. It takes an agency-specific approach in order to promote parallel treatment and ensure that it's the defendant that can provide a remedy. It's the entity with the actual hiring and firing responsibility. And here, that was the Department of Correction, not the state of Indiana. Upchurch doesn't really provide any reason as to why this court should deviate from that holding in De Silva. What we haven't addressed, I understand the argument you're making on the employer, is the IDOC's discretion, or how it chooses between informal discipline and formal discipline. And Upchurch did present other employees at the CIF who got informal sanctions. And he consistently got formal sanctions, which, of course, prevented him from eligibility for employment. So how is that disparity not evidence for Upchurch that he was being targeted to avoid his promotion? Your Honor, he didn't provide specific evidence regarding those employees' employment history, which is important because the department uses a progressive discipline policy. And so without having all of this evidence regarding those other employees, we can't determine whether they were similarly situated and treated more favorably. So the Bogway case that we cited in our brief talks about that, that you have to have specific evidence about these employees so that you can determine whether there are material differences and whether the differential treatment was due to race. So your position is not enough that he says, Delph, here's Delph, here's what he did, here was the sanction, here's Raines, here's what he did, here was the sanction? No, Your Honor, because we have to have their discipline history to know whether the difference was due to his race or whether it was because maybe they had no discipline prior to that in Upchurch had. So in order for it to be compared, we have to have more evidence than we do in this case. The department asks that this court affirm the district court's screen and summary judgment. Thank you. Thank you. Mr. Darcy. Thank you. The plaintiff produced, or excuse me, the defendant produced the personnel files of the employees that were in question that you asked about. We introduced those into evidence. I believe those documents show the disciplinary history. As a matter of fact, we referred to them in our summary of those employees, what they had done, when they were promoted, when they were given discipline, as Jeff said, given informal discipline. So to say that we didn't produce evidence of discipline is not correct. If there's something that the Department of Correction knows, some other record, they have to produce that. And that's what this court has said in the decisions talking about the summaries of histories and employment histories. So the argument of the employer is maybe this or maybe that. That's not sufficient for summary judgment. They can argue that at trial, but not for summary judgment. The employer said that the decisions talk about agency. What the decisions mean by agency is an entity, a legal entity. We can't, no one, none of us can sue or sue something that's not a legal entity. And that's the first requisite. And then who the employer is is the employer that has the final authority. The state lied or the employees lied when they said that the warden has the final decision. The warden does not have the final decision. That was stated in the recent case from Indiana Court of Appeals. The governor has the final decision. The governor has the final decision in litigation cases. And in this case, the warden can't settle this case. It's the governor that has to settle this case. The warden has the initial decision. Maybe she has the final decision in the institution, giving the benefit of the doubt to the employer, to the state as to what in the world they're talking about. Maybe that's what they're talking about. But is she unsupervised? That's what the state is arguing. She's unsupervised. I don't believe that's what the policies and procedures in the law require. The law requires supervision. The law can't have the laws not say that the discriminator has the final decision, or has to have the final decision. And the state falls back on honest belief. That's a pretext argument. And there is a lot of evidence that Deputy Cole did not believe that Upchurch had tobacco. He showed it in the video once, and Upchurch said, let's see it again. He wouldn't show it to him. Upchurch's supervisor agreed with Upchurch. They did not give Upchurch a tobacco test, which is provided for by policy. And those are the kinds of evidence we have on each of the acts. They're too numerous to go through, but there's the evidence of discrimination for years. Thank you. Thank you. Our thanks to both counsel. The case is taken under advisement.